UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

-------------------------------------------------------------------x

MS "PUCON" Schifffahrtsgesellschaft mbH & Co. KG

            Plaintiff,

  -against-

Global American Transport LLC

           Defendant.

-------------------------------------------------------------------x

Case No.: 4:22-CV-01227

## VERIFIED COMPLAINT

Plaintiff MS "PUCON" Schifffahrtsgesellschaft mbH & Co. KG ("**Plaintiff**") files this Verified Complaint ("**Complaint**") against Defendant Global American Transport LLC ("**GAT**" or "**Defendant**") and alleges as follows:

### SUBJECT MATTER JURISDICTION

1.     This is a case of admiralty or maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims ("**Supplemental Rule B**").

### PARTIES

2. The Plaintiff is a business entity organized and existing under the laws of Germany, with a registered office located in Hamburg, Germany.

3. The Defendant is a business entity organized and existing under the laws of Delaware, United States with its place of business in Chicago, Illinois.

**UNDERLYING FACTS**

4. NSC Atlantic Trading GmbH & Cie. KG ("**NSC Shipping**") entered into a time charter with GAT dated March 5, 2021, (the "Original Charter") for the hire of the bulk carrier vessel ALMIRANTE STORNI (the "**Vessel**") for a period of about 100 to 130 days at a hire rate of $14,000.00 per day. In the terms of the Original Charter, GAT had the liberty to sublet the Vessel for all or any of the time under the charter period. **See Original Charter Party, attached hereto as Exhibit A and incorporated herein by reference**.

5. By an addendum to the Original Charter dated April 23, 2021, (collectively with the Original Charter, the "Charter Party") the head owner of the Vessel was changed from NSC Shipping to MS "PUCON" Schifffahrtsgesellschaft mbh & Co KG ("**MS PUCON**"); the charter period for the Vessel was extended until December 31, 2021; and a new hire rate of $13,300.00 per day was to apply retroactively from April 19, 2021. **See Addendum, attached hereto as Exhibit B and incorporated herein by reference**.

6. Upon information and belief, GAT thereafter sub-chartered the Vessel to Norlat Shipping Ltd. AS ("Norlat").

2

7. Upon information and belief, under GAT's sub-charter agreement with Norlat, a shipment of packages of Swedish redwood and other wood products (the "Cargo") were to be transported from Orrskar, Sweden to Alexandria, Egypt.

8. The Cargo was loaded in Orrskar, Sweden on or about November 19 and 30, 2021.

9. On or about December 4, 2021, between the ports of loading and discharge, there was a fire incident on the Vessel that necessitated the offloading of all cargo from the Vessel to enable repairs to be carried out on the Vessel in Turkey, delaying delivery of the Cargo.

10. Upon completion of repairs the Vessel was reloaded and the carriage of the Cargo for discharge in Alexandria, Egypt continued.

11. Upon the Vessel's approach to Alexandria, Egypt, it was substantially delayed in its arrival at a berth to discharge the Cargo due to document filing issues with Egyptian customs.

12. Upon information and belief, it was GAT's sub-charterer, Norlat's, responsibility to resolve the document filing issues, as updated bills of lading dated September 1 and September 5, 2022, had been issued to allow for discharge of the Cargo in Alexandria.

13. Because of the aforesaid delays, the Vessel was only able to berth in Alexandria, Egypt, on September 8, 2022.

14. Following its berthing in Alexandria, the Vessel required extensive hull cleaning due to oily water and garbage at its berth, for which Plaintiff issued a letter of protest to GAT on September 18, 2022.

20512864.v1

15. Due to the above-described delays, for which Plaintiff has accounted for applicable off-hire periods in a Hire Statement attached hereto, the Vessel was not redelivered to Plaintiff until October 1, 2022, following discharge of the Cargo on September 27, 2022, and completion of hull cleaning on October 1, 2022. **See Hire Statement, attached hereto as Exhibit C attached hereto and incorporated herein by reference.**

16. Clause 3 of the Charter Party states that "hire to continue until the time of the day of [the Vessel's] redelivery as per Clause 56 in like good order and condition, ordinary wear and tear excepted."

17. Regarding GAT's obligation to pay Plaintiff for bunkers (marine fuel), Clause 30 of the Charter Party provides, relevantly, that "[b]unkers on redelivery to be about same quantities as on delivery, [GAT] on delivery and Owners on redelivery to take over bunkers remaining on board at Platt's price quoted for the [] port of delivery/redelivery."  Further, Clause 55 of the Charter Party contemplates "when the vessel is redelivered any difference shall be refunded by Owners or paid by Charterers as the case may be."

18. Clause 89 of the Charter Party contemplates that GAT is responsible for: "any delays and/or other expenses/consequences resulting from . . . customs and any other government bodies/servants shall be for Charterers account unless caused by Owners."

19. Pursuant to the terms of the Charter Party described above, and as detailed in the Hire Statement attached hereto as Exhibit C, GAT owed a total of $8,445,091.02 for hire, bunkers, cleaning costs, and related expenses, of which only $7,617,482.24 has been paid to Plaintiff.

20. GAT has thus failed to make payment of $827,608.78 to Plaintiff under the Charter Party.

21. Clause 94 of the Original Charter provides that the contract shall be governed by and construed in accordance with English law and referred to arbitration in London in accordance with the Arbitration Act 1996, conducted in accordance with current London Maritime Arbitrators Association (LMAA) Terms.

22. Arbitration was commenced in February 2022 in London (initially based on claims related to the Vessel fire on or about December 4, 2021).

23. Under English Law, pursuant to Section 61(2) of the Arbitration Act 1996, costs follow the event; such costs to include the costs of arbitration and litigation, including costs of arbitration and litigation, as well as attorneys' fees, costs and expenses.

24. Plaintiff has thus sustained damages in the principal amount of (a) $827,608.78; plus (b) estimated attorneys' fees and arbitral costs at a total of at least $248,282.63. This is a conservative estimate of 30% of the principal amount and Plaintiff reserves all rights to seek increased security as may be needed in this proceeding. Likewise, the Plaintiff reserves all rights to seek and recover the full quantum of its damages, attorneys' fees, costs, interest and other expenses in arbitration in England.

25. Plaintiff brings this action pursuant to Rule B of Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil

Procedure solely to obtain personal jurisdiction over Defendant and to obtain security for its claims in arbitration in London.

**BREACH OF MARITIME CONTRACT UNDER U.S. LAW**

26. Paragraphs 1 through 25 of this Complaint are repeated and realleged as if the same were set forth here at length.

27. The Defendant breached its obligations to perform under the Charter Party made up of the Original Charter and its Addendum by failing to make timely payments of the amounts owed to Plaintiff for hire, bunkers, hull cleaning, and associated costs, as set forth in detail above.

28. The Original Charter, including the Addendum, as a time charter party for vessel services is a maritime contract under the General Maritime Law of the United States.

29. By failing to pay the amounts owed to Plaintiff under the Charter Party, the Defendant has thereby breached a maritime contract under the General Maritime Law of the United States.

**SUPPLEMENTAL RULE B ALLEGATIONS**

30. Paragraphs 1 through 29 of this Complaint are repeated and realleged as if the same were set forth here at length.

31. As set forth above, pursuant to the Charter Party, the underlying merits of the dispute are being resolved by arbitration in London. The Plaintiff expressly reserves all its rights to arbitrate the merits of the underlying dispute.

20512864.v1

32. The Plaintiff brings this action solely to obtain quasi in rem jurisdiction over the Defendant and to secure the claims being pursued in the London arbitration described above.

33. Upon information and belief, and after investigation, the Defendant cannot be found within the District of Missouri within the meaning of Supplemental Rule B. **See Accompanying Declaration of Steven T. Walsh .**

34. Upon information and belief, the Defendant has or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees within the District which are believed to be, or will be, due and owing to the Defendant.

35. Specifically, upon information and belief, and after investigation, the Defendant has intangible property/assets in the form of funds in an account of a known garnishee, BMO Harris Bank N.A. ("**BMO Harris Bank**"), a bank with a national presence, which are available to the Defendant in the bank's Missouri branches located within the Eastern District of Missouri. **See certain, non-exclusive list of Bank Locations within the Eastern District of Missouri listed in Schedule A to this Complaint**.

36. The Plaintiff is accordingly entitled to attach the Defendant's property within this District pursuant to the provisions of Supplemental Rule B of the Federal Rules of Civil Procedure, including any intangible property in the hands of the garnishee BMO Harris Bank.

37. The Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B,

20512864.v1

attaching, inter alia, any assets of Defendant held by garnishees within the District, specifically the Garnishee identified above, for the purpose of obtaining personal jurisdiction over Defendant and to secure Plaintiff's claims, as described above.

WHEREFORE, the Plaintiff prays for the following:

(A)   That process in due form of law be issued against the Defendant citing it to appear and answer under oath all and singular the matters alleged in this Complaint, failing which default judgment be entered against it in the sum of at least $1,075,891.41 which covers outstanding hire due and owing, costs owed for bunkers, hull cleaning costs and associated expenses owed under the Charter Party, as well as estimated attorneys' fees, costs and interest;

(B)   That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issue an Order directing the Clerk of the Court to issue a Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching all goods, chattels, credits, , letters of credit, effects, debts and monies, monies in accounts, tangible or intangible property, or any funds up to at least the amount of $1,075,891.41, belonging to, due or being transferred to, from or for the benefit of Defendant, including, but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of garnishees to be named, and specifically the Garnishee identified herein, and that all persons claiming any interest

in the same be cited to appear and pursuant to Supplemental Rule B answer the matters alleged in this Complaint;

(C)     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

(D)     That this Court recognize and confirm any award or judgment(s) rendered on the claims against Defendant set forth herein as a judgment of this Court.

(E)     For such other and further relief as this Court deems just and proper.


SANDBERG PHOENIX & von GONTARD P.C.


By:     */s/ Steven T. Walsh*
Steven T. Walsh, #59546
Timothy B. Niedbalski, #59968
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
swalsh@sandbergphoenix.com
tniedbalski@sandbergphoenix.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 17th day of November, 2022.

**SCHEDULE A**

**BMO Harris Bank Locations in the Eastern District (non-exclusive)**

1. 603 Locust St, St. Louis, MO 63101
2. 2301 S Kingshighway Blvd, St. Louis, MO 63110
3. 4210 S Kingshighway Blvd, St. Louis, MO 63109
4. 9206 Watson Rd, St. Louis, MO 63126
5. 13205 Manchester Rd, St. Louis, MO 63131
6. 700 Corporate Park Dr, Clayton, MO 63105
7. 355 Corporate Park Dr, Clayton, MO 63105
8. 5256 S Lindbergh Blvd, Sappington, MO 63126
9. 3701 S Lindbergh Blvd, Sappington, MO 63127
10. 10911 Olive Blvd, Creve Coeur, MO 63141
11. 1060 Jeffco Blvd, Arnold, MO 63010
12. 3095 Clarkson Rd, Ellisville, MO 63017
13. 3001 Winghaven Blvd., O'Fallon, MO 63368