UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

----------------------------------------------------------------------x

MS "PUCON" Schifffahrtsgesellschaft mbH & Co. KG

                                   **Plaintiff,**

  **-against-**                                                                                                    Case No.: 4:22-cv-01227

**Global American Transport LLC**

                                   **Defendant.**

----------------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS GLOBAL AMERICAN TRANSPORT LLC'S CLAIM FOR SUPPLEMENTAL RULE E COUNTERSECURITY

NOW COMES Plaintiff/Respondent MS "PUCON" Schifffahrtsgesellschaft mbH & Co. KG ("MS PUCON"), by and through its attorneys, Sandberg Phoenix & Von Gontard P.C. and Zeiler Floyd Zadkovich (US) LLP, and submits this memorandum in support of its Motion to Dismiss Defendant/Counter-Claimant Global American Transport LLC's ("GAT") Claim for Supplemental Rule E Countersecurity contained in its Original Counterclaim ("Counterclaim").

MS PUCON respectfully submits that pursuant to Federal Rule of Civil Procedure 12(b)(6) GAT has failed to state a claim upon which relief can be granted. For the reasons set out below, GAT's claim for countersecurity must be dismissed in its entirety.

### I.    Background

On March 5, 2021, NSC Atlantic Trading GmbH & Cie. KG ("NSC Shipping") entered into a time charterparty with GAT for the hire of the bulk carrier Vessel Almirante Storni (the "Vessel"). On April 23, 2021, an addendum was made to the time charterparty, replacing NSC

1

Shipping with MS PUCON as the head owners of the Vessel. GAT thereafter sub-chartered the Vessel to a third party.

Between November 19 and 30, 2021, cargo was loaded on the Vessel in Sweden for discharge in Egypt. On December 4, 2021, and while in transit, there was a fire incident aboard the Vessel that resulted in the offloading of the cargo from the Vessel, so repairs could be carried out on the Vessel. The repairs were completed in Turkey and the cargo was reloaded on to Vessel. Thereafter, the Vessel proceeded to the port of discharge in Egypt.

Upon arrival in Egypt, the Vessel encountered significant delays as a result of filings at the Egyptian customs, which according to the terms of the time charterparty, was the responsibility of GAT and/or the sub-charterer.

On September 8, 2022, the Vessel berthed. On September 18, 2022, the Vessel issued a letter of protest to GAT for extensive hull cleaning due to the oily water and garbage at berth, as these charges were for GAT's account. Discharge of the cargo from the Vessel was not completed until September 27, 2022, and the Vessel was redelivered on October 1, 2022. GAT was obligated to redeliver the Vessel with the same quantities of bunkers as the Vessel had at delivery, or in the alternative pay MS PUCON the difference.

MS PUCON discounted the time the Vessel was prevented from berthing up to cargo discharge and redelivery in its final hire statement as off-hire. MS PUCON issued its detailed hire statement that captured payments for hire, bunkers, hull cleaning costs and other related costs, which amounted to a total of $8,445,091.02. [*Dkt. No. 1-3*]. GAT paid $7,617,482.24, leaving an outstanding payment of $827,608.78 due and owing to MS PUCON. GAT has refused to pay such outstanding sums to date.

Pursuant to Clause 94 of the time charterparty, MS PUCON initiated arbitration proceedings in February 2022 in London.

On November 17, 2022, MS PUCON filed its Verified Complaint and application for maritime attachment and garnishment pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rules"), [*Dkt. No. 1*], seeking to attach GAT's property located in the district, up to the amount of $1,075,891.41 consisting of the damages alleged by MS PUCON in the pending London arbitration proceedings, plus estimated attorneys' fees and arbitral costs of at least $248,282.63.

On November 18, 2022, this Court granted the application for maritime attachment and instructed the Clerk of Court to issue a writ of attachment and garnishment. Such writ was served on Garnishee BMO Harris Bank (the "Garnishee"), located within this District.

On December 9, 2022, the Garnishee filed its answer to MS PUCON's Verified Complaint, indicating a total sum of $2,120.35 of GAT's property had been attached in a bank account maintained by the Garnishee. [*Dkt. No. 17*]. No further assets have been attached since then, and $1,073,771.06 of MS PUCON's damages remain unsecured. To date, GAT has not posted voluntary security to cover MS PUCON's unsecured portion of the claim.

On March 10, 2023, GAT filed its answer to MS PUCON's Verified Complaint and its Counterclaim against MS PUCON seeking a total sum of $539,629.00 as countersecurity pursuant to Supplemental Rule E for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule E") to be posted within ten days of issuance of an order approving the countersecurity. [*Dkt. No. 39*].

## II. Standard of Review under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a court must dismiss a cause of action when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although in the context of a motion to dismiss, the court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor, "[t]he court is not bound to accept as true legal conclusions couched as factual allegations." Further, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Determinations of Rule 12(b)(6) motions are based on the allegations in the pleadings. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996). A claim "should not be dismissed for failure to state a claim unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); see also, *Kelly v. City of Omaha*, Neb., No. 14-3446, 2016 WL 660117 (8th Cir. Feb. 18, 2016) (Holding that: "[t]o survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Kutrip v. Am. Healthways Servs., Inc.*, No. 4:09-CV-1762 (CEJ), 2010 WL 561748, *1 (E.D. Mo. Feb. 10, 2010) ("The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.").

## III. Legal Argument - The claim for Rule E(7) Countersecurity fails because it defeats the purpose of countersecurity

For the reasons provided below, GAT's demand for countersecurity pursuant to Rule E(7) must fail.

A. *Only a party who has given security in the original action can assert a counterclaim for security, GAT has not done so*

Rule E(7)(a) provides as follows:

> **When a person who has given security for damages in the original action asserts a counterclaim** that arises from the transaction or occurrence that is the subject of the original action, **a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise**. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.
> (Emphasis added)

The Advisory Committee's Notes 2000 Amendment of the Federal Rules of Civil Procedure noted that "Subdivision (7)(a) was amended to make it clear that a plaintiff need only give security to meet a counterclaim *when the counterclaim is asserted by a person who has given security for damages alleged in the original action*." (Emphasis added).

Rule E's purpose is one of equity and fairness. This purpose was crystallized by the Supreme Court in *Washington-S. Nav. Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 639 (1924). It should be noted that at the time of the Supreme Court's ruling in *Washington*, Former Admiralty Rule 50, Rule E's predecessor was at issue. The spirit and purpose of Rule E, however, has not changed.[1] The Supreme Court in *Washington* held that to ascertain the true meaning of an admiralty rule, it must be read in the light of the established admiralty jurisdiction, of the general principles of maritime law, and of the appropriate function of rules of court. *Id.* The court determined that the purpose of the former Admiralty Rule 50 (now Rule E) was to place parties on an equal footing as regards security for their claims. *Id.*

---

[1] Former Admiralty Rule 50 provided that: "Whenever a cross-libel if filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, *and the respondent or claimant in the original suit shall have given security to respond in damages*, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court, for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed, until such security be given unless the court otherwise directs." Prior to Rule 50 was Former Admiralty Rule 53, which was to the same general effect.

5

Circuits have followed this spirit when ruling on Rule E cases. For example, the Second Circuit in *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, held that in determining whether to grant countersecurity pursuant to Rule E, the court should be guided primarily by two principles: (1) the purpose of Rule E(7) which is "to place the parties on an equality as regards security"; and (2) the fact that the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. 56 F.3d 394, 399-400 (2d Cir. 1995).

In balancing these principles, the trial court is to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection. *Id. (citing Titan Nav., Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987).

Further, in *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis* the court held that like that of its predecessors, Rule E(7)'s purpose is to "place the parties on an equality as regards security." 905 F.2d 347 (11th Cir. 1990). Also, the court held that "although countersecurity determinations are vouchsafed to the district court's discretion, the court's inquiry must be guided by several considerations" including but not limited to, the extent to which the counterclaim may be deemed frivolous. *Id.*

In the instant case, the facts speak for themselves. MS PUCON obtained a writ of attachment pursuant to Supplemental Rule B up to the amount of $1,075,891.41 as security for its claims is pending in the London Arbitration. All that has been attached, however, is $2,120.35 of GAT's property located in a bank account held by the Garnishee. With no other form of security in place, GAT now seeks countersecurity in the amount of $539,629.00. This request, if granted, would place a disproportionate burden on MS PUCON and counter the spirit of Rule E. It would

leave MS PUCON exposed with $1,073,771.06 of its claim unsecured. An attachment in the amount of $2,120.35 cannot be found to be burdensome on GAT and certainly does not warrant the posting of countersecurity in the full amount of GAT's alleged damages.

For the above reasons, and in the spirit of Rule E(7), GAT's demand for countersecurity must be denied. The balance of probabilities is in favor of MS PUCON, as there is no reciprocal protection whatsoever for MS PUCON should the countersecurity be granted to GAT.

Alternatively, in the event that this Court should find that GAT is entitled to some amount of countersecurity, MS PUCON respectfully submits that such amount should be proportional to the sums attached by MS PUCON in this action.

B. *MS PUCON has shown cause why GAT's request for countersecurity should be denied*

Rule E(7), on its face, leaves the ultimate determination of granting a request for countersecurity or to direct otherwise to the Court. Such a determination is to be made on a case-by-case basis and is to be reasonable under the circumstances. *See Expert Diesel, Inc. v. Yacht Fishin Fool*, 627 F. Supp. 432, 433 (S.D. Fla. 1986) [2] (citing *Spriggs v. Hoffstot*, 240 F.2d 76 (4th Cir.1957) see also (*Titan Nav., Inc. v. Timsco, Inc.*, 808 F.2d 400 (5th Cir. 1987) (holding that determination of "for cause" shown, for purposes of an exception to posting countersecurity, "is relegated to sound discretion of district courts." The court further held that where a counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant, then it should not require countersecurity. *Id.*). MS PUCON has met its burden of showing cause why GAT's request for countersecurity must be denied.

---

[2] The court there found, on the facts of this case, that no security was necessary under Rule E(7) to equalize the positions of the parties. The court also found that compelling Plaintiff to post a bond to secure Defendants' counterclaim would unfairly and unreasonably inhibit Plaintiff's prosecution of its case. *Id.*

The Iowa case of *Ceres Consulting, L.L.C. v. Cargo Aboard Barge "GULFMASTER 1" Consisting of 10 Steel Beams*, shows that where no security has been posted for the original claim, no security should have to be posted for the counterclaim. No. 1:12-CV-00032-JEG, 2013 WL 12145801 (S.D. Iowa Aug. 16, 2013). In that case, the plaintiff exercised its maritime lien over defendant's beams. Defendant thereafter requested countersecurity pursuant to Rule E(7)(a) in addition to an order vacating the attachment of its beams. Plaintiff argued that defendant had not posted security and was therefore not entitled to countersecurity. The court held that, considering that the intent of Rule E(7) was to place parties on equal footing, and that plaintiff has simply arrested defendant's beams and, thus far, defendant had refused to post security to release those beams, defendant was not entitled to countersecurity.[3]

The same should be found here. Like the defendant in *Ceres*, GAT has not sought to vacate the attachment, neither has GAT provided voluntary security for the unsecured amount of MS PUCON's claims. Further, MS PUCON attached a fraction of its damages in these proceedings resulting in a negligible burden on GAT. Although the parties have tried to negotiate security and countersecurity outside of this Court, GAT has not agreed to put up security in the full amount of MS PUCON's claim that remains unsecured. Due to GAT's refusal to post full security, and the stark imbalance of the funds MS PUCON has attached compared to the countersecurity GAT now seeks, the request for countersecurity in the full amount of GAT's alleged damages must be denied.

MS PUCON has met its burden to show cause pursuant to Rule E(7).

---

[3] This case relied on the 5th Circuit case *Transportes Caribe, S.A. v. M/V Feder Trader*, where the district court rejected the request for countersecurity, because defendant owner had not posted the security ordered for release of its vessel. 860 F.2d 637 (5th Cir. 1988).

**IV.  Conclusion**

For all the aforementioned reasons, MS PUCON respectfully requests that this Court grant its motion to dismiss GAT's claims for Rule E(7)(a) countersecurity in its Counterclaim, or in the alternative, reduce the countersecurity to an amount comparable to the $2,120.35 of GAT's property attached by MS PUCON in this action.

Dated: April 14, 2023

                                                **SANDBERG PHOENIX & von GONTARD P.C.**

                                          By:   */Steven T. Walsh*
                                                                  Steven T. Walsh, #59546
                                                                Timothy B. Niedbalski, #59968
                                                    600 Washington Avenue - 15th Floor
                                                                   St. Louis, MO  63101-1313
                                                                              314-231-3332
                                                                        314-241-7604 (Fax)
                                                                  swalsh@sandbergphoenix.com
                                                       tniedbalski@sandbergphoenix.com

Edward W. Floyd
Luke Zadkovich
Eva-Maria Mayer
**ZEILER FLOYD ZADKOVICH (US) LLP**
33 East 33rd Street, Suite 905
New York, NY 10016
*Attorneys for Plaintiff/Respondent*
luke.zadkovich@zeilerfloydzad.com
ed.floyd@zeilerfloydzad.com
eva.mayer@zeilerfloydzad.com
(617) 943 7957

(*Pro hac vice filing forth coming*)

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 14th day of April 2023.

                                                */Steven T. Walsh*
                                                  Steven T. Walsh